# EXHIBIT 19

17618CON1(AP)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant:  Acheampong et al | Examiner:  Marcela M. Cordero Garcia |
| Serial No.:  11/897,177 | Group Art Unit: 1654 |
| Filed:  August 28, 2007 | Confirmation No.: 3860 |
| For:  METHODS OF PROVIDING THERAPEUTIC EFFECTS USING CYCLOSPORIN COMPONENTS | Customer No.:  051957 |

**Amendment**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

    The Applicants submit with this paper a list of amended claims at page 2.

Remarks follow at page 5.

Docket No. 17618CON1(AP)
Serial No. 11/897,177

**CLAIMS**

The following listing of claims will replace all previous versions of claims presented in this application:

1.  (Currently amended)  A method of treating ~~an eye of a human or animal comprising:~~ a condition selected from vernal conjunctivitis and atopic keratoconjunctivitis, the method comprising administering to an eye of a human or animal a composition in the form of an emulsion comprising water, a hydrophobic component, and a cyclosporin component in a therapeutically effective amount equal to or less than 0.05% by weight of the composition, wherein the weight ratio of the cyclosporin component to the hydrophobic component is less than 0.08.

2. (Original)   The method of claim 1 wherein the administering step is effective in treating a condition selected from the group consisting of dry eye syndrome, phacoanaphylactic endophthalmitis, uveitis, vernal conjunctivitis, atopic keratoconjunctivitis and corneal graft rejection.

3. (Original)  The method of claim 1 wherein the administering step is effective in treating dry eye syndrome.

4. (Previously presented)  The method of claim 1 wherein the blood of the human or animal has no detectable concentration of the cyclosporin component.

5. (Previously presented)  The method of claim 1 wherein the blood of the human or animal has substantially no detectable concentration of the cyclosporin component as measured using a validated liquid chromatography/mass spectrometry analytical method.

6. (Original)  The method of claim 1 wherein the blood of the human or

2

AGN_RES0200031

Docket No. 17618CON1(AP)
Serial No. 11/897,177

animal has a concentration of the cyclosporin component of 0.1 ng/ml or less.

7. (Original)  The method of claim 1 wherein the cyclosporin component comprises a material selected from cyclosporin A, derivatives of cyclosporin A and mixtures thereof.

8. (Original)  The method of claim 1 wherein the cyclosporin component comprises cyclosporin A.

9. (Original)  The method of claim 1 wherein the cyclosporin component is solubilized in the hydrophobic component present in the composition.

10. (Original)  The method of claim 1 wherein the hydrophobic component is present in the composition in an amount greater than 0.625% by weight of the composition.

11. (Original)  The method of claim 1 wherein the hydrophobic component comprises an oily material.

12. (Original)  The method of claim 1 wherein the hydrophobic component comprises an ingredient selected from the group consisting of vegetable oils, animal oils, mineral oils, synthetic oils and mixtures thereof.

13. (Original)  The method of claim 1 wherein the hydrophobic component comprises castor oil.

14. (Original)  The method of claim 1 wherein the administering step comprises topically administering the composition to the eye of the human.

15. (Original)  The method of claim 1 wherein the composition comprises

AGN_RES0200032

Docket No. 17618CON1(AP)
Serial No. 11/897,177

an effective amount of an emulsifier component.

16. (Original)  The method of claim 1 wherein the composition comprises an effective amount of a tonicity component.

17. (Original)  The method of claim 1 wherein the composition comprises an effective amount of an organic tonicity component.

18. (Original)  The method of claim 1 wherein the composition comprises a polyelectrolyte component in an amount effective in stabilizing the composition.

19. (Original)  The method of claim 1 wherein the composition has a pH in the range of about 7.0 to about 8.0.

20. (Original)  The method of claim 1 wherein the composition has a pH in the range of about 7.2 to about 7.6.

21. – 36 (canceled).

37.  (Previously presented)  The method of claim 1, where the cyclosporin component is in a therapeutically effective amount of less than 0.05% by weight of the composition.

4

AGN_RES0200033

Docket No. 17618CON1(AP)
Serial No. 11/897,177

REMARKS

The applicants have reviewed the prosecution history of the present application and co-pending application no. 10/927,857, and have found significant errors.  The purpose of this filing is to bring those errors to the attention of the examiner, to file an IDS, and to submit new claims.

The Ding reference and obviousness

The present application describes two compositions at Example 1. Composition II is as follows:

Present Application

|  | Composition II |
| --- | --- |
| Cyclosporin A | 0.05 % |
| Castor Oil | 1.25 % |
| Polysorbate 80 | 1.00 % |
| Pemulin® | 0.05 % |
| Glycerine | 2.20 % |
| NaOH | qs |
| Purified water | qs |
| pH | 7.2-7.6 |
| Ratio cyclosporin to castor oil | 0.04 |

A method of using composition II fell within the scope of the original claims that the applicants previously presented for prosecution.

In a final action dated December 12, 2008, the Office rejected the claims under 35 U.S.C. § 103 in view of U.S. Patent No. 5,474,979 (the "Ding reference").  The Ding reference discloses at Examples 1B, 1D, and 1E the compositions shown on the following page.

5

AGN_RES0200034

Docket No. 17618CON1(AP)
Serial No. 11/897,177

<u>Ding Reference</u>

|  | Example 1B | Example 1D | Example 1E |
|---|---|---|---|
| Cyclosporin A | 0.40 % | 0.05 % | 0.05 % |
| Castor Oil | 5.00 % | 0.625 % | 0.625 % |
| Polysorbate 80 | 1.00 % | 1.00 % | 1.00 % |
| Pemulin® | 0.05 % | 0.05 % | 0.05 % |
| Glycerine | 2.20 % | 2.20 % | 2.20 % |
| NaOH | qs | qs | qs |
| Purified water | qs | qs | qs |
| pH | 7.2-7.6 | 7.2-7.6 | 7.2-7.6 |
| Ratio cyclosporin to castor oil | 0.08 | 0.08 | 0.08 |

The only difference between Composition II of the present application, and Examples 1D and 1E of the Ding reference, is that Example 1D has more cyclosporin, and Example 1E has less castor oil.  The only difference between Composition II and Example 1B of the Ding reference, is that Example 1B has less cyclosporin and less castor oil, although both compositions have cyclosporin and castor oil in the same proportion.  Stated differently, Composition II has the same amount of cyclosporin as Example 1E, the same amount of castor oil as Example 1D, and the same proportion of cyclosporin to castor oil as Example 1B. As shown on the following page, the compositions are otherwise the same.

6

AGN_RES0200035

Docket No. 17618CON1(AP)
Serial No. 11/897,177

Compositions of the Ding reference compared to

Composition II of the present application '

| | Ding *et al.* Example 1B | Ding *et al.* Example 1D | Ding *et al.* Example 1E | Composition II |
|---|---|---|---|---|
| **Cyclosporin A** | 0.20 % | 0.10 % | **0.05 %** | **0.05 %** |
| **Castor Oil** | 5.00 % | **1.250 %** | 0.625 % | **1.250 %** |
| Polysorbate 80 | 1.00 % | 1.00 % | 1.00 % | 1.00 % |
| Pemulin® | 0.05 % | 0.05 % | 0.05 % | 0.05 % |
| Glycerine | 2.20 % | 2.20 % | 2.20 % | 2.20 % |
| NaOH | qs | qs | qs | qs |
| Purified water | qs | qs | qs | qs |
| pH | 7.2-7.6 | 7.2-7.6 | 7.2-7.6 | 7.2-7.6 |
| **cyclosporin : castor oil** | **0.04** | 0.08 | 0 .08 | **0.04** |

The Office argued that the differences between the compositions disclosed in the
Ding reference and the compositions of the present application were obvious:

> It would have been obvious to one of ordinary skill in the art at the
> time the invention was made to modify the composition of Ding et
> al. by increasing the amount of castor oil or decreasing the
> cyclosporine concentration. . . . [O]ne skilled in the art would readily
> envisage the claimed composition.  The skilled artisan would have
> been motivated to do so because such proportions were taught by
> the Ding et al. patent.   There would have been a reasonable
> expectation of success, given that compositions with a higher
> amount of castor oil are encompassed by the Ding et al. claims and
> because optimizing the ratio of cyclosporine/hydrophobic
> components to below 0.08 was taught by Ding et al.

Office action dated December 12, 2008, at 4-5 (parenthetical text omitted).

> The applicants concede that it would have been obvious to modify
> examples 1A-1E of the Ding reference to arrive at Composition II of the present

7

Docket No. 17618CON1(AP)
Serial No. 11/897,177

application.  The differences are insignificant.  One need only use the cyclosporin concentration of Example 1E (0.05%), the castor oil concentration of Example 1D (1.250%), and the remaining ingredients of those examples.  As the examiner correctly observes, one of ordinary skill in the art "would readily envisage" such a composition, especially in view of Example 1B: having selected 0.05% as the concentration of cyclosporin, Example 1B (wherein the ratio of cyclosporin to castor oil is 0.04) teaches that the concentration of castor oil should be 1.250% (0.05% / 1.250% = 0.04).  The applicants concede that in making this selection (0.05% cyclosporin and 1.250% castor oil) there would have been a reasonable expectation of success; the differences between Examples 1A-1E and Composition II are too small to believe otherwise.

The formulation of Composition II is squarely within the teaching of the Ding reference, and the Office should disregard any statements by the applicants suggesting otherwise, whether in this application or in co-pending application no. 10/927,857.

The Ding reference and 0.05% cyclosporin

Counsel for the applicants attempted to distinguish the Ding reference by arguing that it does not disclose any therapeutically effective compositions comprising less than 0.10% cyclosporin.  That argument is in error.  It urges an interpretation of the Ding reference that the applicants do not accept.

Counsel for the applicants had advanced a case based not on evidence but on speculation: the Ding reference states that Examples 1A-1D were tested for ocular bioavailability; it does not state that Example 1E (cyclosporin 0.05%) was tested for ocular bioavailability; therefore, Ding *et al.* did not consider a 0.05% cyclosporin composition to be therapeutically effective.  The examiner rejected this argument, and the applicants concede that the examiner was correct to do so.

8

AGN_RES0200037

Docket No. 17618CON1(AP)
Serial No. 11/897,177

Hence, the Office should disregard the following argument from the
Amendment of September 8, 2008 and all statements filed in connection with this
application or co-pending application no. 10/927,857 in support of that argument:

Ding provides absolutely no suggestion that a concentration of a
cyclosporin component less than 0.1% would be therapeutically
effective at all.  Ding mentions three times (in column 5, lines 15-
32) that the formulations of Examples 1A-1D, which have
cyclosporin A concentrations of 0.1% or to 0.4%, are bioavailable,
non-toxic, and therapeutically effective.  However, conspicuously
absent from all these data is any mention of the composition of
Example 1E.

. . .

Ding's conspicuous omission from mention of Example 1E as a
formulation having therapeutic effectiveness cannot simply be
ignored . . . a person of ordinary skill in the art would certainly
consider this omission, repeated by Ding three times, as intentional.

Thus, Ding . . . obviously teaches away from the claimed invention.

Applicants' Amendment, filed September 8, 2008, at 10-11 (emphasis omitted).
Those statements are incorrect, and do not reflect the applicants' position.

Counsel's argument was based on an unfounded negative implication.  It
is the equivalent of arguing, for example, that because Ding *et al.* fail to state that
their compositions are chemically stable, that one should expect them to explode;
that because they fail to state that their compositions are not radioactive, that
they are radioactive; or that because nowhere do Ding *et al.* state that the
compositions will *not* give a patient x-ray vision, that one may conclude that the
compositions will allow a patient to see through walls.  Counsel's logic elevates
speculation above evidence, and permits one to draw any conclusion, no matter
how incredible.

Counsel for the applicants had not identified any reason to believe that the
compositions of the Ding reference would be ineffective using cyclosporin in

9

AGN_RES0200038

Docket No. 17618CON1(AP)
Serial No. 11/897,177

amounts less than 0.10%.  The Ding reference expressly discloses a composition comprising 0.05% cyclosporin; it describes its testing; and it claims its use.  As the examiner aptly points out:

> nowhere in the Ding reference it is expressly stated that such compositions having less than 0.10% [cyclosporin] would be inoperative.  Moreover . . . Ding teaches that "the formulations set forth in Examples 1-4 were made for treatment of keratoconjunctivitis sicca (dry eye syndrome) . . ."  Therefore it is clear that such compositions, including Examples 1A thru 1E (having as low as 0.05% of cyclosporin) were all intended as therapeutic compositions.

Office action dated December 12, 2008, at 10 (emphasis omitted).  The applicants concede that the examiner is correct.

In sum, the notion that that "Ding provides absolutely no suggestion that a concentration of a cyclosporin component less than 0.1% would be therapeutically effective at all," Applicants' Amendment, filed September 8, 2008, at 10-11, is incorrect.  It improperly characterizes the Ding reference, and the Office should disregard any statements made in support of that characterization, whether in this application or in or co-pending application no. 10/927,857.


Claim amendments

In view of the foregoing, the applicants have amended the claims to recite a method of treating a condition selected from vernal conjunctivitis and atopic keratoconjunctivitis; the claims that the applicant previously presented were directed to a "method of treating an eye."  Support for the conditions vernal keratoconjunctivitis and atopic keratoconjunctivitis may be found at paragraph 0031 of the present application.

AGN_RES0200039

Docket No. 17618CON1(AP)
Serial No. 11/897,177

Information Disclosure Statement

Composition II of Example I of the present application describes the formulation of Restasis®, a treatment for dry eye.  Restasis® has been on sale in the United States since approximately April, 2003.  The applicants submit with this paper an IDS with the prescribing information that Restasis is sold with.

The Commissioner is hereby authorized to charge any fees required or necessary for the filing, processing or entering of this paper or any of the enclosed papers, and to refund any overpayment, to deposit account 01-0885.

Respectfully submitted,

/JOEL B. GERMAN/

Date: June 15, 2009                     _____

JOEL B. GERMAN
Attorney of Record

Registration Number 48,676
Please direct all inquiries and correspondence to:
Joel B. German, Esq.
Allergan, Inc.
2525 Dupont Drive, T2-7H
Irvine, California 92612
Tel:  (714) 246-4920 Fax:  (714) 246-4249

11

AGN_RES0200040