# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ALLERGAN, INC., § § *Plaintiff*, § § v. § § TEVA PHARMACEUTICALS USA, INC., § et al., § § *Defendants*. § | Case No. 2:15-cv-1455-WCB |

## MEMORANDUM OPINION AND ORDER

Before the Court is Mylan Pharmaceuticals Inc., and Mylan Inc.'s Motion to Compel, Dkt. No. 210. The Mylan defendants ("Mylan") ask the Court to order plaintiff Allergan, Inc., to produce a settlement agreement between Allergan and Apotex (formally, Apotex Corp. and Apotex Inc.), one of the generic drug manufacturers initially sued by Allergan in this case. The Court GRANTS the motion to compel and directs that the agreement be produced on an Outside Counsel's Eyes Only basis.

## BACKGROUND

After the Apotex settlement, Mylan requested that Allergan produce the Apotex Settlement and License Agreement, the document that reflects the terms on which Allergan and Apotex settled this action against Apotex. Allergan refused to produce the agreement, citing the confidentiality clause in the agreement that prohibited Allergan from revealing the terms of the agreement to others. Allergan ultimately agreed to produce the agreement on an Outside Counsel's Eyes Only basis if Mylan would agree that the attorneys who were privy to the agreement would not be involved in any settlement negotiations with Allergan. Mylan refused to accept that offer and filed the present motion to compel.

1

**DISCUSSION**

Settlement and license agreements are frequently the subjects of discovery requests, including in patent cases where one accused infringer settles with a patentee and others seek to discover the agreement between the settling parties. The parties seeking disclosure of such agreements claim that the agreements are relevant to issues in the remaining litigation, such as damages, secondary indicia of non-obviousness, the availability of injunctive relief, and patent misuse.

Courts have frequently ordered the production of such agreements, subject to appropriate guarantees of confidentiality. See, e.g., PerdiemCo, LLC v. Industrack LLC, 2:15-cv-727, 2016 WL 6611488, at *4-5 (E.D. Tex. Nov. 9, 2016) (Payne, J.); Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc., 854 F. Supp. 2d 427, 428 (E.D. Tex. 2012) (Gilstrap, J.); Datatreasury Corp. v. Wells Fargo & Co., No. 2:06-cv-72, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010) (Folsom, J.); Tyco Healthcare Grp. LP v. E-Z-EM, Inc., No. 2:07-cv-262, 2010 WL 774878, at *2 (E.D. Tex. Mar. 2, 2010) (Ward, J.); State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc., Case No. 14-cv-10266, 2016 WL 6822014, at *2 (E.D. Mich. Nov. 18, 2016); Phillips v. Ottey, Civil Action No. DKC 14-980, 2016 WL 6582647, at *2 (D. Md. Nov. 7, 2016); Blount v. Major, No. 4:225-cv-322, 2016 WL 6441597, at *2 (E.D. Mo. Nov. 1, 2016); Blair v. Transam Trucking, Inc., Case No. 09-2443, 2016 WL 1756446, at *3 (D. Kan. Apr. 29, 2016); Simms v. Nat'l Football League, Civil Action No. 3:11-cv-248, 2013 WL 11570273, at *4 (N.D. Tex. Feb. 27, 2013); Automated Merchandising Sys. Inc. v. Crane Co., 279 F.R.D. 366, 371 (N.D.W. Va. 2011); Small v. Nobel Biocare USA, LLC, 808 F. Supp. 2d 584, 590 (S.D.N.Y. 2011); Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc., No. 1:05-cv-955, 2011 WL 2470460, at *13-14 (M.D.N.C. June 20, 2011) (citing numerous cases); Wyeth v. Orgenus

Pharma Inc., Civil Action No. 09-3235, 2010 WL 4117157, at *4 (D.N.J. Oct. 19, 2010); Thermal Design, Inc. v. Guardian Bldg. Prods., Inc., 270 F.R.D. 437, 439 (E.D. Wis. 2010); In re Enron Corp. Sec. Derivative & ERISA Litig., 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009) (citing numerous cases); Abbott Diabetes Care Inc. v. Roche Diagnostics Corp., No. C05-03117, 2007 WL 4166030, at *4 (N.D. Cal. Nov. 19, 2007); Gutter v. E.I. DuPont De Nemours & Co., No. 95-2152-CIV, 2001 WL 36086590, at *2 (S.D. Fla. Jan. 31, 2001); Datapoint Corp. v. Picturetel Corp., No. Civ. A. 3:93-cv-2381, 1998 WL 51356, at *2 (N.D. Tex. Jan. 23, 1998); Key Pharms., Inc. v. ESI-Lederle, Inc., No. Civ. A. 96-1219, 1997 WL 560131, at *3 (E.D. Pa. Aug. 29, 1997); Koch Indus., Inc. v. Columbia Gas Transmission Corp., Civ. A. No. 89-2156, 1990 WL 72789, at *2 (E.D. La. May 29, 1990).

Although Allergan is correct that many of the courts that have required the production of settlement agreements have done so after determining that the agreements may be relevant to damages—a matter that is not at issue in this case—a number of courts have required the production of settlement agreements based at least in part on their relevance to issues of validity. See Wyeth v. Organus Pharma, Inc., 2010 WL 4117157, at *4; Datatreasury Corp. v. Wells Fargo & Co., 2010 WL 93259, at *1; Datapoint Corp. v. Picturetel Corp., 1998 WL 51356, at *2; In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig., 831 F. Supp. 1354, 1378-79 (N.D. Ill. 1993) (Easterbrook, J., sitting by designation); Am. Standard Inc. v. Pfizer Inc., 722 F. Supp. 86, 136 n.55 (D. Del. 1989); Am. Standard, Inc. v. Pfizer, Inc., Misc. 87-1-73, 1988 WL 156152, at *2 (S.D. Ind. July 8, 1988). Moreover, although Allergan suggests that the general principles requiring disclosure of such agreements do not apply to Hatch-Waxman cases, one of

the cases cited above, Key Pharmaceuticals, Inc. v. ESI-Lederle, Inc., was a Hatch-Waxman case in which the court ordered a third-party settlement agreement produced.[1]

Allergan contends that Mylan has not shown that the settlement agreement is relevant to any issue in the case. Allergan is correct that because this is a Hatch-Waxman case, certain theories of relevance that would be applicable in other infringement actions are not applicable here. Thus, while settlement agreements are often regarded as relevant to damages, Allergan points out that damages are not likely to be an issue in this case, as damages are typically not awarded in Hatch-Waxman cases. In addition, while settlement agreements can be pertinent to the availability of injunctive relief to the extent they bear on the adequacy of monetary relief, that is less likely to be a factor in a Hatch-Waxman Act case, because an injunction is the ordinary remedy granted to a successful patentee. See 35 U.S.C. § 271(e)(4)(B). Finally, to the extent that Mylan argues that the settlement agreement could be relevant to a defense of patent misuse, Allergan points out that no defendant has raised patent misuse as a defense, and the time for amending pleadings has long since passed.

While Allergan has successfully rebutted several theories of relevance, the Court finds that the settlement agreement is nonetheless at least minimally relevant to the secondary consideration of commercial success, which in turn relates to the issue of obviousness. Allergan responds that it does not plan to use the settlement with Apotex to argue commercial success, and that the settlement agreement is therefore not relevant to the secondary considerations bearing on the validity of the patents in suit. But that is an unsatisfactory response; the settlement agreement is potentially relevant to commercial success regardless of whether

---

[1] To be sure, as Allergan points out, the Key Pharmaceuticals case is distinguishable because the court in that case based its relevance determination on a claim of patent misuse, which has not been pleaded in this case.

Allergan plans to exploit it, since it is possible that the defendants may wish to make use of that evidence. Significantly, Allergan is not saying that it does not intend to argue commercial success, only that it does not intend to use the settlement agreement with Apotex to support its commercial success argument. On that point, Mylan's argument as to relevance is persuasive.

Allergan argues that Mylan is seeking to obtain access to the settlement agreement not because of its relevance to any issue in the litigation, but for the improper purpose of aiding Mylan in potential settlement negotiations. Allergan points out that it has offered to provide the settlement agreement to Mylan if Mylan would limit access to outside counsel who are not involved in settlement negotiations. Mylan, however, has refused that offer, arguing that such a restriction would impose an unjustified burden on it by restricting the ability of its attorneys to advise their client in the course of this litigation. Creating a group of "litigation" counsel and a separate group of "settlement" counsel, Mylan argues, would be both cumbersome and expensive, and is not justified by any of Allergan's arguments regarding the sensitivity of the settlement agreement. The confidentiality of that agreement, Mylan argues, will be sufficiently protected by limiting its access to outside counsel who are engaged in the litigation, with no restrictions placed on the ability of those attorneys to advise their client with regard to settlement. The Court agrees that Allergan has not made the showing of exceptional need that would be required to justify the kind of restriction on access that Allergan is requesting, which would go beyond even the highly restrictive "Outside counsel—attorneys' eyes only" limitation.

Allergan contends that as a policy matter disclosure of settlement agreements will discourage parties from settling cases such as this one if the parties know their settlement agreements will be discoverable by their competitors who may be co-defendants in the litigation.

In making that argument, Allergan argues that its position "reflect[s] the policy concerns underlying Federal Rule of Evidence 408."

Although Allergan stops short of arguing that Rule 408 applies to the discovery request here at issue, other courts have addressed that issue and have held that the rule does not create a "federal settlement privilege" that bars the discovery of settlement agreements. A particularly thorough and thoughtful analysis of the applicability of Rule 408 to a request for disclosure of a settlement agreement is from Judge Bates of the United States District Court for the District of Columbia, in In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp. 2d 201 (D.D.C. 2007). After analyzing the competing arguments, Judge Bates concluded that there is no federal settlement privilege, and that Rule 408 was directed to the issue of the admissibility of settlement material, not its discoverability. 370 F. Supp. 2d at 207-12. Judge Bates concluded that the opponent of production in that case had failed to show with "a high degree of clarity and certainty that the proposed privilege will effectively advance a public good," and he "decline[d] to tinker so fundamentally with the rules of litigation based on little more than [the opponent's] assertion that it will benefit the public." Id. at 212 (citing In re Sealed Case, 148 F.3d 1073, 1076 (D.C. Cir. 1998)). This Court reaches the same conclusion. The ordinary rules of litigation require the production of relevant information; the Court has concluded that the settlement agreement in this case is relevant; no privilege or other bar to production exists; so the material must be produced.

In any event, whatever force there may have been at one point to the argument that the disclosure of settlement agreements will discourage parties from entering into settlements, that argument has little force now, because well-counseled parties who engage in settlement negotiations in multi-defendant cases such as this one will know that it is very possible that their

6

settlement agreements will be discoverable by co-defendants who may be their competitors. While they may prefer that such agreements not be shared with co-defendants, that is not to say that the production of such agreements has significantly affected parties' behavior or that it will do so in the future. It is speculative to guess whether the possibility of the disclosure of settlement agreements imposes a burden on parties in such cases sufficient to dissuade them from settling lawsuits; for that reason, the policy consideration argued by Allergan is not sufficiently persuasive to justify altering the principles of discovery to accommodate it.

Finally, Allergan argued in its response that it is "precluded" from producing the Apotex settlement agreement by the terms of the agreement and Apotex's refusal to waive the confidentiality clause of the agreement. Whatever limits that agreement may impose on Allergan, however, the case law is clear that no such confidentiality agreement can bind a court and bar the court from ordering production of the agreement. Otherwise, parties could, by agreement, effectively create new privileges against discovery orders, no matter how relevant the material in question may be. See Wyeth v. Orgenus Pharma Inc., 2010 WL 4117157, at *4 (citing numerous cases). During the telephonic hearing, Allergan acknowledged that a court order requiring the production of a settlement agreement would override a confidentiality clause in the agreement. That clause therefore imposes no limit on the discoverability of the settlement agreement.

In summary, Mylan has made a showing that the settlement agreement with Apotex is at least minimally relevant, and Allergan has presented no persuasive reason to foreclose discovery of that material. The Court therefore GRANTS the motion to compel the production of the requested information. At the hearing, Mylan agreed to the condition on production that the settlement agreement be made available only to Mylan's outside counsel and on an Attorneys'

Eyes Only basis. The Court will endorse that agreement and make it part of the order requiring the material to be produced.

In its motion to compel, Mylan stated that it is seeking the production of the settlement agreement resolving an Inter Partes Review involving Allergan and Argentum Pharmaceuticals LLC. However, in its request for relief, Mylan did not request that the Court enter an order with regard the Argentum settlement agreement. The parties, moreover, have not briefed the merits of that issue. The Court therefore will not address the issue of the production of the Argentum settlement agreement in the present order.

IT IS SO ORDERED.

SIGNED this 12th day of January, 2017.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE