IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| ALLERGAN, INC., | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:15-cv-1455-WCB |
| v. | § | **LEAD CASE** |
| | § | |
| TEVA PHARMACEUTICALS USA, et al., | § | |
| | § | |
| Defendants. | § | |

| ALLERGAN, INC., | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:16-cv-0401-WCB |
| | § | |
| FAMY CARE LIMITED, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the <u>Opposed Motion to Amend the Stipulated Protective Order in Civil Action No. 2:16-cv-0401 as to Defendant Famy Care Limited Only</u>, Dkt. No. 271, filed by defendant Famy Care Ltd. ("FCL"). FCL requests that the Protective Order governing the consolidated case be amended in FCL's individual case to allow two non-attorneys to view material that the plaintiff Allergan, Inc., designated "Confidential." FCL has also filed <u>Defendant Famy Care Limited's Motion for In-Person Hearing</u>, Dkt. No. 283, which requests an in-court hearing on its motion to amend the protective order. Plaintiff Allergan, Inc., also opposes this motion. Dkt. No. 283, at 4. The Court DENIES both motions.

1

## BACKGROUND

On August 24, 2015, Allergan filed Case No. 2:15-cv-1455 against Teva Pharmaceuticals USA, Inc.; Akorn, Inc.; Mylan Pharmaceuticals, Inc.; and Mylan, Inc. Allergan filed a separate action against Innopharma, Inc., on September 8, 2015. Allergan, Inc. v. Innopharma, Inc., Case No. 2:15-cv-1504 (E.D. Tex.). That case was consolidated with the previous action on October 29, 2015. Id., Dkt. No. 20.

On January 4, 2016, the Court entered a protective order agreed upon by the parties that were then party to the consolidated case. Dkt. No. 86.[1] Under that protective order, the parties may designate as "Confidential" any material "that a Producing Party believes in good faith can be disclosed to select employees or agents of a Receiving Party . . . solely for the purposes set forth herein without substantial risk of harm to the Producing Party." Id. at 3. In defining "Confidential" information, the order provides:

> Examples of such information include, but are not limited to: trade secrets or other confidential research, development, commercial, proprietary, non-public, technical, business, financial, patent prosecution, sensitive, or private information, including any approved or unapproved New Drug Application (NDA) or Abbreviated New Drug Application (ANDA) that purports to cover a product involved in this suit and any amendments thereto, or any correspondence with the FDA regarding same. The term also includes extremely sensitive confidential information that a Producing Party believes in good faith: (i) creates a substantial risk of harm to the Producing Party if disclosed to select employees or agents of a Receiving Party . . . ; (ii) is necessary to protect the privacy interests of an individual; or (iii) is subject to an express obligation of confidentiality owed by the Producing Party to a third party.

Id. Access to Confidential information is restricted to the receiving party's outside counsel and "up to three In-House counsel per group of affiliated parties and each counsel's clerical staff and paralegals." Id. at 8.

---

[1] "Dkt. No." citations refer to Case No. 2:15-cv-1455, unless otherwise noted.

Allergan sued FCL on April 12, 2016, and Allergan and FCL jointly moved to consolidate the case with the previously instituted action, No. 2:15-cv-1455 (lead case). See Case No. 2:16-cv-401, Dkt. Nos. 1, 29. The joint motion to consolidate did not mention the protective order entered in the lead case. Id., Dkt. No. 29. Neither did the subsequent consolidation order entered on June 16, 2016. Dkt. No. 140.

The parties, including FCL, engaged in discovery under the existing protective order through February 10, 2017, with expert discovery continuing through May 16, 2017. See Dkt. No. 269, at 2. FCL, for example, "was providing accelerated fact discovery" during the summer of 2016. Dkt. No. 271, at 4 (FCL served initial disclosures as well as noninfringement and invalidity contentions in July 2016, and produced documents to Allergan on June 6 and June 20, 2016).

It appears that FCL first proposed allowing non-attorneys access to Confidential information on October 31, 2016. Dkt. No. 271-5; compare Dkt. No. 271-4 (email from FCL's counsel to Allergan's counsel on September 9, 2016, states, without further explanation, that FCL would "like to discuss a modification to the protective order" at a future date). FCL requested that Ms. Minaksi Bhatt, an attorney and Vice President of Intellectual Property at Lupin Pharmaceuticals, Inc., (collectively, together with Lupin Ltd., "LPI"), as well as Ms. Rachita Naidu and Mr. Manish Mundra, two non-attorneys in LPI's Intellectual Property Management Group, be designated as FCL's three "In-House counsel" representatives.[2] Dkt. No. 271, at 1-2.

---

[2] FCL represents that it entered into an agreement with LPI granting LPI the authority to supervise and control the litigation, and therefore proposes LPI personnel as "In-House counsel." Dkt. No. 271, at 1 n.3. (FCL is the ANDA-holder; LPI will act as FCL's United States distributor. Id.) Allergan has not opposed FCL's motion to amend the protective order on this ground.

In nearly identical declarations, Ms. Naidu and Mr. Mundra averred that LPI's Intellectual Property Management Group, of which they are a part, "supervises FCL's litigation counsel in this case," and that they review FCL's filings, contentions, and discovery responses, and will review FCL's expert reports. Dkt. No. 271-10, at 3; Dkt. No. 217-11, at 3. They also state that their "responsibilities at Lupin are limited to management of intellectual property and patent litigation," explaining that they "track patent litigations, provide updates on those litigations to management, and . . . communicate with other groups about those litigations," while limiting those communications "to information already in the public domain." Id.

Allergan agreed to treat Ms. Bhatt as "In-House counsel" under the protective order but objected to treating Ms. Naidu and Mr. Mundra in that manner, because they are not attorneys. As revealed by FCL's briefing of its motion to modify the protective order, LPI has another in-house attorney, Ms. Kathryn Jones, who works with Ms. Bhatt but whom FCL has not proposed to serve as "In-House counsel" under the protective order. See Dkt. No. 279-3.

## DISCUSSION

### I. Legal Standard

The parties disagree about the proper legal standard for the Court to apply to this disputed issue. FCL contends that it never agreed to have the existing protective order govern the consolidated cases and that Allergan bears the burden of proving that the existing protective order should apply to FCL. Allergan, meanwhile, argues that the existing protective order applies to all of the parties in the consolidated cases and that FCL bears the burden of showing good cause to amend that protective order as it applies to FCL.

Even though FCL's case was consolidated after the protective order had been entered in the lead case, that does not mean that FCL's case is not governed by the protective order. As

stated in the consolidation order, FCL's separate case would "remain[] active for venue determinations and trial," but the case against FCL was otherwise "consolidated for all pretrial issues (except venue) with the Lead Case." Dkt. No. 140, at 1. The "parties [were] instructed to file any future filings (except relating to venue) in the Lead Case." Id. In other words, venue and trial were carved out, but the FCL case was consolidated for all other purposes.

Furthermore, FCL did not object to the protective order for more than four months after consolidation. Meanwhile, FCL and Allergan were engaged in discovery and were producing a large volume of documents pursuant to the existing protective order. See, e.g., Dkt. No. 271, at 4 (FCL made two document productions to Allergan in July 2016). Allergan, in particular, produced more than 1.5 million pages of documents under the terms of the protective order. Dkt. No. 278, at 7. For months, FCL accepted Allergan's productions under the protective order and gave no reason for the parties to behave otherwise. Its contention that the protective order should be modified in its case comes late and ignores the prior proceedings in the case.

Thus, after successfully moving to consolidate the cases for all pretrial issues but venue, FCL accepted discovery on the same terms as the other defendants without objection. The consolidation order and FCL's conduct establish that the parties have treated the existing protective order as applicable to the entire consolidated case, including FCL's individual case. FCL's current motion is therefore properly viewed not as an opposition to the entry of a protective order under Fed. R. Civ. P. 26(c), but as a request to modify the existing one.

FCL argues that Allergan should bear the burden of showing good cause to maintain the existing protective order in effect as to FCL even if, consistent with the title of FCL's motion, FCL is viewed as moving to amend the current protective order. According to FCL, the nonmoving party always has the burden of showing good cause when the moving party

5

challenges a blanket protective order—i.e., an order that allows the producing party to determine the confidentiality designation of its documents. See United States v. Ocwen Loan Serv'g, No. 4:12-CV-543, 2016 WL 278968, at *3, *4 (E.D. Tex. Jan. 22, 2016) (citing In re Enron Corp. Sec., Derivative, & ERISA Litig., No. MDL-1446, 2009 WL 3247432, at *3 (S.D. Tex. Sept. 29, 2009)).

FCL's position is based on an incorrect reading of the case law. The nonmoving party does not always bear the burden of defending a blanket protective order; rather, the nonmoving party bears the burden of defending its designations if the moving party challenges the good cause basis for the document designations. See In re Enron, 2009 WL 3247432, at *3 ("Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document.").[3]

Here, FCL is not challenging the good cause basis for Allergan's confidentiality designations, or even the good cause basis for a two-tier protective order. Indeed, FCL repeatedly argues that its proposed modification permitting access to non-attorneys will preserve Allergan's "Confidential" designations and not result in further disclosure or use. See Dkt. No. 271, at 6 ("FCL accepts the existing Order (Dkt. No. 86) except for this dispute over Section 5(a)(ii) (and the related definitions), governing the access of in-house employees to confidential materials."). Clearly, FCL is challenging only the good cause for limiting access to these documents to in-house non-attorney employees. As the movant on that issue, FCL bears the burden of showing good cause for the modification.

---

[3] In fact, until mid-January 2017, FCL itself designated "every document it produced 'Confidential.'" Dkt. No. 279, at 1.

6

The Court also notes that, to the extent FCL argues that the protective order does not control, this district's Local Patent Rule 2-2 would apply.  That Rule provides:

> If any document or information produced under these Patent Local Rules is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" . . . by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).
> If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney[.]

If FCL were correct that the existing protective order does not apply, then it would now be operating under the Local Rule, which allows only outside counsel to access "Confidential" material and is much more restrictive than the existing protective order in the consolidated cases. In any event, for the reasons set forth below, the Court concludes that FCL has not shown any adequate reason to modify the access provision of the existing protective order, as it applies to FCL.

## II.  FCL Has Not Shown Good Cause to Modify the Protective Order

The Court has "broad discretion in entering and modifying [a protective] order." Raytheon v. Indigo Sys. Corp., No. 4:07-cv-109, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008).  When "deciding whether to modify a stipulated protective order at the behest of a party that originally agreed to the order . . . , the court considers four factors: (1) the nature of the protective order, (2) the foreseeability, at the time of the issuance of the order, of the modification requested, (3) the parties' reliance on the order, and most significantly (4) whether good cause exists for modification."  United States v. Ocwen Loan Serv'g, 2016 WL 278968, at *2 (quoting Raytheon, 2008 WL 4371679, at *2) (internal quotation marks omitted).

## A. Nature of the Protective Order

The "nature" of the protective order refers to "its scope and whether it was court imposed or stipulated to by the parties." Ocwen Loan Serv'g, 2016 WL 278968, at *2. Here, the relevant "scope" of the existing protective order is the provision limiting access to three in-house counsel (and clerical staff and paralegals). The undisputed definition in the protective order of "Confidential information" is "trade secrets or other confidential research, development, commercial, proprietary, non-public, technical, business, financial, patent prosecution, sensitive, or private information." Dkt. No. 86, at 3. The definition also includes "extremely sensitive confidential information that . . . (i) creates a substantial risk of harm to the Producing Party if disclosed to select employees or agents of a Receiving Party . . . ; (ii) is necessary to protect the privacy interests of an individual; or (iii) is subject to an express obligation of confidentiality" to a third party. Id.

Under this definition, restricting access to attorneys is reasonable. FCL argues that its proposed non-attorney designees do not present a risk of disclosure and will sign statements agreeing to this Court's jurisdiction and to abide by the prospective restrictions imposed by the protective order on in-house counsel with access to confidential material. See Dkt. No. 271-10, at 3-4 (citing Dkt. No. 86, at 8); Dkt. No. 271-10, at 3-4 (same). Regardless of those promises, however, those individuals are not attorneys, and that distinction matters. As the Federal Circuit stated in U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984), in the context of access to and handling of confidential material, "retained" and "in-house" counsel are both "officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." See also Round Rock Res., LLC v. Dell Inc., No. 4:11-CV-332, 2012 WL 1848672, at (E.D. Tex. Apr. 11, 2012) (relying on U.S. Steel Corp. "[i]n determining

whether a protective order should bar one party's *attorney* access to information") (emphasis added). FCL's proposed non-attorney designees are not officers of the court, are not bound by the same Code of Professional Responsibility, and are not subject to the same sanctions. They cannot be disbarred or disciplined in the same way, and therefore they do not face similarly serious consequences for breach of the protective order. And while the proposed non-attorneys may agree to submit to the Court's jurisdiction, the Court is aware that it may have limited or no enforcement power over the designees (who are located in India), and over Allergan's documents once they are sent abroad for review.

FCL nevertheless emphasizes that its proposed non-attorneys have been granted access to documents of some level of confidentiality in other actions by agreed stipulation, e.g., Dkt. No. 271-13, and both non-attorneys declare that they have never been accused of improper disclosure, Dkt. No. 271-10, at 4; Dkt. No. 271-11, at 4. But Allergan is not solely concerned with the character and intent of these non-attorneys; it is also concerned with the risk of inadvertent disclosure. See U.S. Steel, 730 F.2d at 1468 ("To the extent that [inadvertent disclosure] may be predicted, and cannot adequately be forestalled in the design of a protective order, it may be a factor in the access decision.").

It is unclear whether the non-attorneys are personally involved in competitive decisionmaking, but both state that they provide "updates to management." Dkt. No. 271-10, at 3; Dkt. No. 271-11, at 3. At a minimum, that characterization of their responsibilities suggests that the non-attorneys are working closely with those involved in competitive decisionmaking. For those reasons, and because LPI has in-house attorneys, the Court concludes that FCL has failed to show the protective order is overly broad to the extent that it restricts access to retained and in-house attorneys. Compare PACid Group, LLC v. Apple, Inc., No. 6:09-cv-143, 2010 WL

10094684, at *4 (E.D. Tex. Feb. 19, 2010) (finding absence of good cause for a protective order restricting access to confidential materials by plaintiff's counsel, because a "reason to believe" that outside counsel was a competitive decisionmaker "cannot be the basis for restricting an *ongoing attorney-client relationship*.") (emphasis added).

In addition, the Court considers FCL's willingness to date to litigate this case under the existing protective order, which weighs against modification. See Ocwen Loan Serv'g, 2016 WL 278968, at *3 (collecting cases reasoning similarly and concluding that "the parties agreed to the protective order; and therefore, that factor weighs against modification.").

**B. Foreseeability of the Modification Requested**

Parties that agree to a protective order are responsible for its terms; thus, a "party's oversight in not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for the relief from the protective order." Ocwen Loan Serv'g, 2016 WL 278968, at *3. FCL was not a party to the case at the time the protective order was entered. However, FCL knew before August 2015 that LPI had the authority to supervise its case. See Dkt. No. 271-3, at 3 (LPI had agreed to supervise FCL's case before August 2015). FCL now seeks a modification that would allow LPI in-house employees to review Allergan's confidential information, a desire that was foreseeable at the time FCL's case was consolidated—i.e., at the time FCL accepted the protective order as governing. See Ocwen Loan Serv'g, 2016 WL 278968, at *3 (finding that this factor weighed against modification because the movant's desire "to review the evidence obtained in the litigation" was foreseeable "at the time [the parties] negotiated and agreed to the Protective Order."). This factor cuts against FCL.

### C. The Parties' Reliance on the Protective Order

"The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery." Ocwen Loan Serv'g, 2016 WL 278968, at *3. It is "'presumptively unfair' to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." Id.

Allergan made huge documentary productions under the governing protective order, and FCL made no objection to the applicability of the protective order to the discovery proceedings until the end of October 2016. Allergan made its designations in reliance on the terms of the two-tier protective order that provides only two options: either no designation, or a "Confidential" designation. In other words, instead of multiple tiers of confidentiality (e.g., "Confidential," "Highly Confidential," "Attorneys' Eyes Only," etc.), the existing protective order allows for only one enhanced level of protection ("Confidential"). This enhanced level encompasses both "trade secrets or other confidential [information]" as well as "extremely sensitive confidential information."

Allergan agreed to the simplified two-tiered protective order with the understanding that its highly sensitive documents could be viewed by in-house attorneys, but not in-house non-attorneys. The protective order is therefore distinguishable from nearly all of the protective orders FCL cites from other cases in which its non-attorney designees have been granted access to confidential information. See Dkt. No. 271-12 (stipulated protective order allowed access to all "confidential" information, but not all "highly sensitive" or "confidential health" information); Dkt. No. 271-13 (stipulated protective order allowed access to "confidential" but not "highly sensitive" information); Dkt. No. 271-15 (same); Dkt. No. 271-17 (same); Dkt. No.

271-18 (stipulated protective order allowed access to "proprietary" and "highly proprietary" but not "outside counsel only" information); see also, e.g., Dkt. Nos. 271-21 and 271-22 (Lupin proposes providing in-house non-attorneys access to "confidential," not "highly confidential," information under a two-tiered protective order).

It would be unfair to penalize Allergan now, when discovery is nearly complete, for relying on the existing two-tier protective order. See Ocwen Loan Serv'g, 2016 WL 278968, at *3 ("The Court finds that the end of the discovery period, after the parties have relied upon the Protective Order to produce documents in the case, is not the appropriate time to dispute the Protective Order, into which the parties jointly entered."). This factor also cuts against FCL.

**D. Existence of Good Cause for the Modification**

Good cause "requires changed circumstances or new situations warranting modification of a protective order." Ocwen Loan Serv'g, 2016 WL 278968, at *4 (internal quotation marks omitted). "[T]he [C]ourt must weigh [the moving] party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals." Id. (quoting Peoples v. Aldine Indep. Sch. Dist., No. 06-2818, 2008 WL 2571900, at *3 (S.D. Tex. June 19, 2008)). FCL presents no evidence of changed circumstances or new situations, as it knew of LPI's supervisory obligations at the time of consolidation.[4]

Regarding alternatives, FCL states that it "will agree that no Allergan manufacturing or process information may be disclosed to the [non-attorney] designees." Dkt. No. 279, at 5. In light of Allergan's reliance on the protective order in making its designations, this is not particularly helpful. FCL's proposal would impose a three-tier protective order retroactively,

---

[4] If anything, the "new information" that LPI has at least two in-house counsel weighs against modification.

12

after Allergan's production of 1.5 million documents. Worse, Allergan would bear the costs of the modification, as it would need to review the documents it has previously designated "Confidential" and re-designate them as either "Confidential" or "Manufacturing/Process Information."

Allergan, meanwhile, proposes a compromise modification that "(1) [FCL]'s non-attorney litigation managers could access briefs and expert reports submitted in this case, but not the underlying Confidential documents cited in those briefs or attached as exhibits; (2) to the extent [FCL]'s non-attorney litigation managers want to view Confidential documents, including those cited in briefs or expert reports, they could view them in the United States, but those documents would not be permitted to leave the country, either physically or electronically." Dkt. No. 280, at 1-2 n.1. The Court accepts Allergan's proposal as a reasonable accommodation of FCL's needs.

FCL has not established the necessity of any greater modification of the protective order. This is not the situation, presented by some of the cases FCL cites (e.g., Dkt. Nos. 271-14, 271-16, 271-19, 271-20, and 271-21), where no in-house counsel exist. Here, LPI has at least two: Ms. Minaksi Bhatt and Ms. Kathryn Jones. See Dkt. No. 279-3, at 3. Ms. Bhatt states that LPI's litigation docket of 22 U.S. and 11 international patent actions is too heavy for her and Ms. Jones to "effectively manage . . . on a daily basis." Id. While those attorneys may be busy, the protective order allows for access by attorneys' clerical and paralegal staff, where responsibility would still lie with the attorney.

Like the court in Cosmo Technologies Ltd. v. Lupin Ltd., this "Court is not persuaded that [FCL] will be unfairly disadvantaged if non-attorney staff, who lack the same professional obligations and are more likely involved in competitive decisionmaking, are prohibited from

13

accessing such information." Dkt. No. 278-4 (concluding that plaintiff had "met its burden to show that its proposed limitation [restricting access to confidential materials to attorneys] is warranted"). FCL's attempt to use the designated attorney's workload to shift the responsibility to non-attorneys in an entirely different division of the company would substantively change the game. See U.S. Steel, 730 F.2d at 1468. In any event, Allergan's proposed compromise relieves the designated attorney of certain burdens the attorney would otherwise bear, to the extent FCL wishes to exercise that option.

Finally, FCL complains that the volume of sealed filings hampers its non-attorney supervisors' ability to perform their duties and requires them to engage in onerous redaction proceedings with Allergan's counsel. But, first, this redaction process is already required for anything designated Confidential by another defendant. See Dkt. No. 86, at 7. Second, and more importantly, the Court has required the parties to file public redacted versions, as required by law. Dkt. No. 208 (Sealing Order); see also Dkt. No. 86 at 12 (provision regarding redacted filings of papers with protected material).

On the other hand, Allergan points out a real risk of disclosure: the FDA has issued new bioequivalence standards, and Allergan's documents could provide a basis for FCL to revise its ANDA for FDA approval. FCL states that any amendments it makes to its ANDA would not "escape notice," and that the injury scenario is "wild speculation." Dkt. No. 279, at 5.

As to any ANDA amendments, Allergan is not arguing about its ability to detect disclosure; it is arguing that the protective order is intended to prevent it. As for Allergan's injury scenario, FCL's (and LPI's) own behavior indicates that this is a real concern. FCL, like all of the other defendants, has agreed not to share any Confidential information with another defendant without express written consent. See Dkt. No. 86, at 7. Meanwhile, LPI has recently

stated in a different action that disclosure to in-house individuals (attorneys or otherwise) poses a danger of inadvertent disclosure in this context. LPI Letter Br., Shire Pharm. Dev. Inc. v. Lupin Ltd., No. 1:16-cv-612, Dkt. No. 38 at 1-2 (D. Md. Jan. 17, 2016) (Lupin objected to designating its ANDA as "confidential" instead of "highly confidential" because the former designation would allow it to be seen by in-house designees and "creates an unacceptable risk of inadvertent use or disclosure of information causing Lupin significant competitive harm.").

Because Allergan has shown a need for protection and FCL has not shown a need for modification of the existing protective order, this factor, like each of the others, cuts against FCL.

For the reasons stated, the Court DENIES FCL's motion to amend the existing protective order. However, the Court accepts Allergan's compromise approach as a basis for an agreed-upon modification to the protective order. If the parties agree upon the modifications proposed by Allergan, they may submit a new version of the protective order, modified as proposed by Allergan, for the Court's endorsement.

### III. FCL Has Provided No Justification for or Right to an In-Person Hearing

FCL also moves for an in-court hearing on its motion to amend, but has provided no reason for the Court to believe that an in-person hearing is needed. FCL's motion merely states that "FCL—and particularly Lupin—are frequent defendants in Hatch-Waxman cases throughout the United States, and are greatly concerned with the potential implications of the outcome of the Motion." Dkt. No. 283, at 2. Parties are often concerned with the outcome of particular motions, but the degree of a party's concern is not a reason to hold a hearing. Particularly for motions such as this one, where there are no live witnesses and no additional evidence for the Court to hear beyond what has been submitted, a hearing is often unnecessary. The Local Rules

of this district provide that "the allowance of an oral hearing shall be within the sole discretion of the judge to whom the motion is assigned." Local Rule CV-7(g). For the following reasons, the Court in this case exercises its discretion not to order an oral hearing on FCL's motion to modify the protective order.

Holding an in-court hearing on the issue raised by FCL would place scheduling burdens on the attorneys forced to attend and would impose unnecessary costs on both sides. FCL states that it is willing to bear the costs, but Allergan, in opposing the motion, indicates that it is not. Furthermore, FCL "anticipates that, at most, such a hearing would require no more than an hour of the Court's time." Dkt. No. 283, at 2. The Court will not order an unwilling party to pay travel costs and for attorney preparation and in-court time for such a short hearing, with no witnesses, and in which full briefing has already occurred. In short, there has been no showing that the Court would be any better informed following a hearing than it is after having studied the moving papers submitted by the parties. The motion is DENIED.

### IV. Order Regarding Sealing

As previously explained in the Court's Sealing Order, "the Court has an independent duty to minimize the extent to which court proceedings are conducted in secret." Dkt. No. 208. The recent round of briefing is not in compliance with that order. Nothing on the face of either party's briefs indicates the inclusion of confidential material, and none of the exhibits, with the possible exception of Dkt. No. 271-3, bear a "confidential" designation or otherwise appear to contain confidential material. In fact, more than ten of FCL's exhibits are public court filings. Dkt. Nos. 271-12 through 217-22. And for its part, Allergan has also sought to seal items that constitute public court records, Dkt. Nos. 278-2 through 278-4, as well as agency guidance, Dkt. No. 278-1. This is not appropriate.

The Court has sought to impress upon the parties the obligation to file moving papers and exhibits in the public record and to move for sealing only with respect to material deserving of that status. Unless the parties provide justification for the sealed status of their filings (Dkt. Nos. 271, 278-79, 281) by noon, Central Standard Time, on March 3, 2017, the Court will direct the Clerk to unseal these documents.

IT IS SO ORDERED.

SIGNED this 28th day of February, 2017.

                                                         WILLIAM C. BRYSON
                                                         UNITED STATES CIRCUIT JUDGE