IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ALLERGAN, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:15-cv-1455-WCB |
| | § | |
| TEVA PHARMACEUTICALS USA, INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Opposed Motion to Join Party Pursuant to Federal Rule of Civil Procedure 25(c). Dkt. No. 517. The Court GRANTS the motion.

## BACKGROUND

On September 8, 2017, following the trial of this case, plaintiff Allergan, Inc., filed a letter with the Court announcing that Allergan had assigned its rights to the patents at issue in this case, to the Saint Regis Mohawk Tribe and that the Tribe had granted Allergan an exclusive license to the patents. Allergan added that it "expects to join the Tribe as a co-plaintiff in due course." Dkt. No. 480-1. Under the terms of the agreements between Allergan and the Tribe, the Tribe will receive $13.5 million upon execution of the agreement and will be eligible to receive $15 million in annual royalties. Dkt. No. 510-3.

On September 11, defendants Mylan Pharmaceuticals Inc. and Mylan Inc. filed a response stating that Allergan "has admitted in other forums that the intent is to employ Native American sovereign immunity and attempt to cut-off pending validity challenges with the Patent Office."

Dkt. No. 481, at 1. Mylan argued that "Allergan is attempting to misuse Native American sovereignty to shield invalid patents from cancellation." Id. at 2.

The Saint Regis Mohawk Tribe has made a special appearance in the inter partes review ("IPR") proceedings pending before the Patent and Trademark Office ("PTO"), and has moved to dismiss those proceedings based on the assertion of the Tribe's sovereign immunity. Dkt. No. 510-7.

After waiting a month for Allergan to file the promised motion to join the Tribe, the Court on October 6 entered an order directing Allergan, by October 13, to submit information regarding the assignment to the Tribe and directing the parties by the same date to file briefs addressing the question whether the Tribe should be added as a co-plaintiff or whether the assignment transaction should be disregarded as a sham. Dkt. No. 503.

Later that day, the defendants filed what they styled Defendants' Notice Regarding Allergan's Document Production According to the Court's October 6, 2017 Order (Dkt. No. 503). Dkt. No. 504. In that filing, the defendants sought to ensure that they would receive copies of the materials submitted by Allergan. In addition, the defendants listed nine categories of documents that they believed Allergan should produce in response to the Court's October 6 order and stated that, "in the event evaluation of Allergan's production reveals the necessity," they would be requesting leave to conduct depositions directed to the nature of Allergan's transaction with the Tribe. Id. at 2. The defendants also requested "leave to file a letter seeking relief from the October 13 filing and allowing Defendants to conduct such depositions on an expedited basis." Id.

On October 9, Allergan filed Plaintiff's Response to Defendants' Notice Regarding Document Production According to the Court's October 6, 2017 Order. Dkt. No. 505. Allergan stated that it had sought the defendants' consent to a motion to add the Tribe as a co-plaintiff

2

pursuant to Federal Rule of Civil Procedure 25(c), but that the defendants had not consented to such a motion. Dkt. No. 505, at 2. Allergan represented that it would produce "all the materials identified in the Court's October 6 order by October 10, and produce to the Court contemporaneously with this filing the assignment and license documents already provided to Defendants." Id. at 2-3. Allergan also represented that it would file an opposed motion to add the Tribe as a co-plaintiff by October 13. Id.

The following day, the Court entered an order that (1) directed Allergan to provide to the defendants all of the materials provided to the Court in response to the Court's October 6 order; (2) directed Allergan to tell the Court what consideration was given to Allergan in exchange for the purported assignment of the patents-in-suit to the Tribe; (3) denied the defendants' requests for the production of additional materials from Allergan and for the opportunity to conduct depositions regarding the issue of whether the Tribe should be added as a co-plaintiff; and (4) denied the defendants' request to submit a letter seeking relief from the October 13 date for filing briefs addressing the question whether the Tribe should be added as a co-plaintiff. Dkt. No. 509.

Allergan subsequently provided additional materials related to the assignment and license transactions between Allergan and the Tribe. Dkt. Nos. 510, 511. Allergan also answered the Court's question about consideration by stating that the consideration for the assignment of the patents to the Tribe was the Tribe's promise not to waive its sovereign immunity with respect to any IPR or other administrative action in the PTO related to the patents. Dkt. No. 510, at 2-4.

The parties' briefs were timely filed on October 13. Dkt. Nos. 513, 514. In addition, Allergan moved to substitute the Tribe as the plaintiff in this action pursuant to Federal Rule of Civil Procedure 25(c), which the defendants opposed. Dkt. No. 517. Allergan represented that the

3

Tribe consents to being joined as a plaintiff in this action. Dkt. No. 513, at 6 n.1. The Court advised the parties that the issue would be resolved without a hearing. Dkt. No. 519.

**DISCUSSION**

The Court has reviewed the information and briefs filed in response to the Court's order. From that information, it is clear that Allergan's motivation for the assignment was to attempt to avoid the IPR proceedings that are currently pending in the PTO by invoking the Tribe's sovereign immunity as a bar to those proceedings.

The Court has serious concerns about the legitimacy of the tactic that Allergan and the Tribe have employed. The essence of the matter is this: Allergan purports to have sold the patents to the Tribe, but in reality it has paid the Tribe to allow Allergan to purchase—or perhaps more precisely, to rent—the Tribe's sovereign immunity in order to defeat the pending IPR proceedings in the PTO. This is not a situation in which the patentee was entitled to sovereign immunity in the first instance. Rather, Allergan, which does not enjoy sovereign immunity, has invoked the benefits of the patent system and has obtained valuable patent protection for its product, Restasis. But when faced with the possibility that the PTO would determine that those patents should not have been issued, Allergan has sought to prevent the PTO from reconsidering its original issuance decision. What Allergan seeks is the right to continue to enjoy the considerable benefits of the U.S. patent system without accepting the limits that Congress has placed on those benefits through the administrative mechanism for canceling invalid patents.

If that ploy succeeds, any patentee facing IPR proceedings would presumably be able to defeat those proceedings by employing the same artifice. In short, Allergan's tactic, if successful, could spell the end of the PTO's IPR program, which was a central component of the America Invents Act of 2011. In its brief, Allergan is conspicuously silent about the broader consequences

of the course it has chosen, but it does not suggest that there is anything unusual about its situation that would make Allergan's tactic "a restricted railroad ticket, good for this day and train only." Smith v. Allwright, 321 U.S. 649, 669 (1944) (Roberts, J., dissenting).

Although sovereign immunity has been tempered over the years by statute and court decisions, it survives because there are sound reasons that sovereigns should be protected from at least some kinds of lawsuits. But sovereign immunity should not be treated as a monetizable commodity that can be purchased by private entities as part of a scheme to evade their legal responsibilities. It is not an inexhaustible asset that can be sold to any party that might find it convenient to purchase immunity from suit. Because that is in essence is what the agreement between Allergan and the Tribe does, the Court has serious reservations about whether the contract between Allergan and the Tribe should be recognized as valid, rather than being held void as being contrary to public policy. See generally Restatement of the Law (Second) Contracts §§ 178-179, 186.

The defendants point out that the assignment-and-licensing transaction in this case is similar in some respects to other transactions that have been held ineffective, such as abusive tax shelter transactions, in which courts have looked behind the face of the transactions to determine whether the transactions have economic substance or are simply a method of gaming the tax system to generate benefits that were not intended to be available. See, e.g., Salem Fin., Inc. v. United States, 786 F.3d 932 (Fed. Cir. 2015); Coltec Indus., Inc. v. United States, 454 F.3d 1340 (Fed. Cir. 2006).

Allergan argues that the transactions are legitimate because the Tribe has offered consideration in the form of its agreement not to waive its sovereign immunity before the PTO and in exchange has received much-needed revenue from Allergan. But such circumstances are

frequently encountered in sham transactions, such as abusive tax shelters. The straw parties who perform the service of making the transaction appear to have economic substance, when it actually does not, are providing a service, for which they are ordinarily well compensated. Nonetheless, the transaction is disregarded if it is contrary to the policies underlying the relevant laws.

Another roughly analogous example cited by the defendants is <u>People ex rel. Owen v. Miami Nation Enterprises</u>, 386 P.3d 357 (Cal. 2016). In that case, two tribal entities ran payday loan businesses. When the lending entities were sued by the State for improper lending practices, the entities asserted sovereign immunity. The California Supreme Court determined that, despite the formal agreements between the lending entities and the tribes, the tribes had no operational control over the businesses and received only a small percentage of the profits of the businesses. After examining all of the circumstances, the court concluded that the arrangement between the lenders and the Tribes was such that the businesses were not entitled to assert the tribes' sovereign immunity.

The concern of the courts in both of those examples is the same: whether the party invoking a particular legal protection has engaged in a bona fide transaction of the sort for which that legal protection was intended. In both the abusive tax shelter cases and the <u>Owen</u> case, the answer was no. In this case, as indicated, the Court has serious doubts that the transaction in which Allergan has sought to obtain immunity from inter partes review by the PTO in exchange for payments to the Tribe is the kind of transaction to which the Tribe's sovereign immunity was meant to extend.

There is a second significant issue presented by Allergan's motion: whether after the Tribe's grant of an exclusive license in the Restasis patents to Allergan, the Tribe has transferred all substantial rights in the patents back to Allergan, so that Allergan, and not the Tribe, is properly

considered the patentee. See, e.g., Diamond Coating Techs., LLC v. Hyundai Motor Am., 823 F.3d 615, 618 (Fed. Cir. 2016). Even assuming that the initial assignment was valid, the Tribe would not be considered the owner of the patents if, through the exclusive license agreement, it has transferred all substantial rights in the patents except for the right to receive royalties on the sale of Restasis. In that event, Allergan would be entitled to maintain this action on its own, and it would not be necessary to add the Tribe as a co-plaintiff. On the other hand, if the Tribe has retained substantial rights in the patents, even after the grant of the exclusive license to Allergan, the Tribe would be a necessary party to this infringement action.

Allergan argues that the Tribe retained substantial rights, including the right to practice the patents for research, education, and other non-commercial uses, and the first right to sue third parties not related to Restasis bioequivalents. Dkt Nos. 518, at 2; Dkt. No. 510-7, at 17-18. The Court has examined the documents provided by Allergan and regards the question as a close one. Some provisions of the exclusive license, such as the limitations on Allergan's rights to as particular field of use—specifically, to practice the patents in the United States for all FDA-approved uses—give the Tribe at least nominal rights with regard to the Restasis patents. It is, however, questionable whether those rights have any practical value. There is no doubt that at least with respect to the patent rights that protect Restasis against third-party competitors, Allergan has retained all substantial rights in the patents, and the Tribe enjoys only the right to a revenue stream in the form of royalties.

The questions as to the validity of the assignment and exclusive license transaction and whether the Tribe is an owner of the Restasis patents within the meaning of the Patent Act may be dispositive in the IPR proceedings. But those issues do not bear on this Court's power to hear this case. Regardless of whether Allergan's tactic is successful in terminating the pending

IPR proceedings, it is clear that the assignment does not operate as a bar to this Court's continued exercise of its jurisdiction over this matter.

This case was brought by Allergan, the Tribe's predecessor in interest, seeking affirmative relief, and thus any possible immunity from suit that might be applicable to avoid litigation brought against the Tribe has no application to this action. See Competitive Techs., Inc. v. Fujitsu Ltd., 374 F.3d 1098, 1102-03 (Fed. Cir. 2004) ("[W]hen a state files suit in federal court to enforce its claims to certain patents, the state shall be considered to have consented to have litigated in the same forum all compulsory counterclaims, i.e., those arising from the same transaction or occurrence that gave rise to the state's asserted claims." (quoting Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111, 1126 (Fed. Cir. 2003))); see also Texas v. Caremark, Inc., 584 F.3d 655, 659 (5th Cir. 2009) ("When a state initiates a lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination." (citing Clark v. Barnard, 108 U.S. 436, 448 (1883))); United States v. Oregon, 657 F.2d 1009, 1014-16 (9th Cir. 1981) (holding that tribe waives sovereign immunity by intervening in lawsuit).

While the sovereign immunity issue is not presented in this case, the question whether Allergan's assignment of its patent rights to the Tribe is valid nonetheless has a bearing on this case, because the validity of the assignment contract between Allergan and the Tribe affects whether the Court should grant Allergan's motion to add the Tribe as a co-plaintiff. If the assignment to the Tribe is valid, the Tribe should be added as a co-plaintiff. If the assignment to the Tribe is invalid, it would not be necessary to add the Tribe as a co-plaintiff.

This is more than a housekeeping matter of determining which names belong in the caption. If the Court declines to join the Tribe as a co-plaintiff and it is later determined that the Tribe is a valid owner of the patents, any judgment entered by the Court could be subject to

challenge on the ground that the owner of the patents was not a party to the action. See Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468 (1926); Diamond Coating Techs., 823 F.3d at 618-19; Propat Int'l Corp. v. RPost, Inc., 473 F.3d 1187, 1189 (Fed. Cir. 2007); Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995).

While it is important to ensure that any judgment in this case will not be subject to challenge based on the omission of a necessary party, the Court is not required to decide whether the assignment of the patent rights from Allergan to the Tribe was valid in order to resolve the question whether to add the Tribe as a co-plaintiff. Instead, the Court will adopt the safer course of joining the Tribe as a co-plaintiff, while leaving the question of the validity of the assignment to be decided in the IPR proceedings, where it is directly presented.

Allergan has moved for the Court to add the Tribe as a co-plaintiff under Rule 25(c) of the Federal Rules of Civil Procedure. That Rule provides that "[i]f an interest is transferred" during the course of litigation, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Because the Tribe is at least the nominal transferee of the Restasis patents, and because failure to join the Tribe could render any judgment rendered by this Court invalid, the Court invokes its discretion under Rule 25(c) to order the Tribe joined as a co-plaintiff. Importantly, the Court's decision to permit joinder of the Tribe does not constitute a ruling on the validity of the assignment of the Restasis patents or the Tribe's status as a "patentee" for purposes of the Patent Act, 35 U.S.C. § 281. Instead, it is "merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1958, at 196-98 (2007).

9

Although the defendants have filed a lengthy and thorough brief in opposition to Allergan's motion to have the Tribe joined as a co-plaintiff in this action, they have not argued that they would be prejudiced in any way by the joinder of the Tribe. The Tribe has consented to joinder, Dkt. No. 513, at 6 n.1; id. at 7, and in light of the fact that the trial and the post-trial briefing in the case has been completed, the presence of the Tribe as a co-plaintiff will not interfere with the prompt entry of the Court's findings of fact and conclusions of law, and the Court's the final judgment in this case. Allergan has represented that "the joinder will not otherwise impact the substantive issues in the litigation. Id. at 6. And, as the successor-in-interest to Allergan, the Tribe would be bound by any judgment. See Kloster Speedsteel AB v. Crucible Inc., 793 F.2d 1565, 1582 (Fed. Cir. 1986). For that reason, substitution of a successor-in-interest is appropriate even when the substitution occurs after trial. Panther Pumps & Equip. Co. v. Hydrocraft, Inc., 566 F.2d 8 (7th Cir. 1977).

Accordingly, in order to ensure that any judgment entered in this case will be protected against challenge on the ground that the proper parties were not all joined as plaintiffs, the Court hereby orders the joinder of the Tribe as a co-plaintiff in this action under Federal Rule of Civil Procedure 25(c). In so doing, the Court does not hold that the assignment of the patent rights to the Tribe is valid, but instead proceeds on the ground that the assignment may at some point be held valid, and that joining the Tribe as a party in this action is necessary to ensure that the judgment in this case is not rendered invalid because of the absence of a necessary party.

IT IS SO ORDERED.

SIGNED this 16th day of October, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE